UNITED STATES of America and
Jordan Lilienthal, Plaintiffs,

v.

CITY OF PITTSBURGH, a municipal
corporation, and Stephen A. Schillo,
Treasurer of the City of Pittsburgh, De-
fendants.

Civ. A. No. 83–1737.

United States District Court,
W.D. Pennsylvania.

May 9, 1984.

Dept. of Justice, Washington, D.C., for plaintiffs.

Marvin Fein, City Sol., Pittsburgh, Pa., for defendants.

## OPINION

TEITELBAUM, Chief Judge.

### I. *Factual Background*

Jordan Lilienthal is an official court reporter for the United States District Court for the Western District of Pennsylvania. He was notified by the City of Pittsburgh that pursuant to the City of Pittsburgh Code of Ordinances, Title Two, Chapter 243, it intended to assess and collect a business privilege tax on the gross receipts from the sale of transcripts provided by Lilienthal in his capacity as official federal court reporter.[1]

A Treasurer's Hearing on the matter was held, at which time the assessment was upheld. Lilienthal then filed an appeal of that determination in the Court of Common Pleas of Allegheny County, Pennsylvania, Civil Division, captioned as *Jordan Lilienthal v. City of Pittsburgh and Stephen A. Schillo, Treasurer,* and numbered as S.A. 311 of 1983. Lilienthal was represented in that action by the United States Attorney for the Western District of Pennsylvania. A hearing on the matter was scheduled for September 9, 1983.

On July 14, 1983, Lilienthal and the United States of America brought the present action in federal court as co-plaintiffs. They sought, among other things, a declaration that the business privilege tax does not apply to federal court reporters, including Lilienthal, because imposition of such a tax against fees received by official federal court reporters for preparing official transcripts amounted to an unconstitutional interference with the United States of America.

This Court issued an order on August 25, 1983 staying the hearing in state court scheduled for September 9, 1983.

Judith Giltenboth, Asst. U.S. Atty., Pittsburgh, Pa., Richard A. Correa, Tax Div.,

---

1. Chapter 243 provides that a business privilege tax of five mills on each dollar of gross annual receipts shall be levied on any person engaged in any business in the City of Pittsburgh.

Presently before the Court are a number of motions by the parties.

## II. *Jurisdictional Objections*

Plaintiffs have asserted that this Court has jurisdiction over this action under 28 U.S.C. § 1345, which provides that:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any officer or by any agency or officer thereof expressly authorized to sue by Act of Congress.

The defendants deny that this Court has jurisdiction over this action and have put forth the following arguments in support thereof.

## A. *Real Party in Interest*

The defendants maintain that because the United States is not a "real party in interest" to this action, 28 U.S.C. § 1345 does not confer jurisdiction upon this Court. According to the defendants, 28 U.S.C. § 1345 confers original jurisdiction upon this Court only if the United States is a "real party in interest." However, only Lilienthal is a "real party in interest" because the taxes in question allegedly are to be paid by him and not by the United States.

█ 28 U.S.C. § 1345 grants to the United States the unqualified right to apply to its own courts when it seeks either to protect its own sovereign interest or to insure the unimpeded administration of one of its policies. *See United States v. Tax Commission*, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975); also *Department of Employment v. United States*, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966).

█ The United States is a "real party in interest" here. It is not necessary that the United States have an alleged pecuniary interest in order to be a "real party in interest." *See United States v. Lewisburg Area School District*, 539 F.2d 301, 305 (3d Cir.1976). The United States is a "real party in interest" when a local statute allegedly conflicts with the laws or Constitution of the United States and it allegedly impedes or frustrates programs or policies of the United States, one of its agencies, or one of its instrumentalities. *See United States v. Arlington County*, 669 F.2d 925, 929 (4th Cir.1982). Such allegations have been made by the plaintiffs in this action.

## B. *28 U.S.C. § 1341*

█ Defendants next argue that this Court lacks jurisdiction over this action because of the Tax Injunction Act, 28 U.S.C. § 1341, which provides that:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

According to the defendants, the business privilege tax was enacted pursuant to 53 P.S. §§ 6902 and 6908. Also, there exists a plain, speedy and efficient remedy in the courts of Pennsylvania under 72 P.S. § 5566b.

█ 28 U.S.C. § 1341 does not deprive this Court of jurisdiction over this action. 28 U.S.C. § 1341 does not bar suits brought by the United States to protect itself or its instrumentalities from an allegedly unconstitutional state tax. *Moe v. Salish & Kootenai Tribes*, 425 U.S. 463, 475–476, 96 S.Ct. 1634, 1642–1643, 48 L.Ed.2d 96 (1976); also *Lewisburg Area School District*, 539 F.2d at 311.

## C. *4 U.S.C. § 106(a) et seq.*

█ Defendants further maintain that the United States is barred by the Buck Act, 4 U.S.C. §§ 106(a) and (111), from applying to its own courts for protection of its sovereign interest in the present case.

4 U.S.C. § 106(a) provides that:

No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services

performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area.

4 U.S.C. § 111 provides that:

The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

Defendants construe these provisions as indicating that Congress has waived any sovereign interest the United States has concerning the imposition of the business privilege tax on federal court reporters, thereby depriving this Court of jurisdiction over this action.

Defendants have misconstrued the purpose of the Buck Act. Congress did not intend when it enacted the Buck Act to waive any sovereign interest of the United States concerning the imposition of the business privilege tax on federal court reporters.

The purpose of the Buck Act is to equalize the tax liability of federal employees who reside or work on federal enclaves and otherwise similarly situated employees who reside or work outside of federal enclaves. *Lewisburg Area School District*, 539 F.2d at 309. It is not the purpose of the Act to permit States to impose specific taxes for specific services performed by federal employees, without regard to the nature of the relationship of the employee to the United States or to the nature of the services provided by the employee.

D. *Conclusion*

It therefore must be concluded that this Court has jurisdiction over this action by virtue of 28 U.S.C. § 1345.[2]

III. *Abstention Objections*

Defendants further contend that even if this Court has jurisdiction over this action it nonetheless should abstain. According to the defendants, all the issues raised in this action are identical to those raised by Lilienthal in the pending state court action. The only federal question raised in either action is whether imposition of the business privilege tax by the City of Pittsburgh violates the Supremacy Clause of the United States Constitution. All other issues are state issues. Were the action in state court to proceed, it is possible that the state court would decide in favor of Lilienthal, thereby mooting this action. According to the defendants, a federal court is required to abstain where issues of state law, which issues could moot the federal issues, could and should be decided by a state court.

Abstention, a judicially-created doctrine, is an extraordinary and narrow exception to the duty of a federal court to adjudicate controversies properly before it. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). This duty may be abdicated in deference to the existence of concurrent litigation in a state court involving the same issues only in the most exceptional circumstances. *See Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Such abdication is justified only where there are important countervailing state interests.

There are three generally recognized doctrines of abstention: Pullman abstention, Younger abstention, and Burford abstention. See *Colorado River*, 424 U.S. at 814–817, 96 S.Ct. at 1244, 1246. Defendants have not indicated which of these doctrines should apply here.

A. *Pullman Abstention*

The first of the abstention doctrines is Pullman abstention. *R.R. Com-*

---

**2.** The defendants also contest the assertion of plaintiffs that this Court has jurisdiction under

28 U.S.C. § 1331. It is not necessary to address this issue at this time.

*mission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The doctrine applies where there are federal constitutional issues which might be mooted by state court determination of relevant state law. *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244. Also, there must exist unsettled issues of state law or an ambiguous state (or local) statute. *See Wisconsin v. Constantineau*, 400 U.S. 433, 438–439, 91 S.Ct. 507, 510–511, 27 L.Ed.2d 515 (1971). Pullman abstention is inappropriate when the most important issues of law presented are federal, not state issues. *See In re Levy*, 574 F.2d 128, 130 (2d Cir.1978); also *United States v. Anderson County*, 705 F.2d 184, 187–188 (6th Cir. 1983).

▮ Pullman abstention does not apply to this case because the most important issues presented are federal, not state, issues. Plaintiffs allege in their complaint that, by virtue of federal law and regulations, the fees received by Lilienthal for preparing official transcripts are part of his compensation as a federal employee and are not receipts from a business; they further allege that, by virtue of federal laws and regulations, such fees are not subject to the City of Pittsburgh business privilege tax; also, they allege that the tax violates the Supremacy Clause of the United States Constitution. Furthermore, such state issues as are presented in either the state action or this action do not depend on any unsettled issues of state law or upon the interpretation of an ambiguous state (or local) statute.

### B. *Younger Abstention*

The second of the abstention doctrines is Younger abstention. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). It is based on "proper respect for state functions, a recognition of the fact that the entire country is made up of a union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 41, 91 S.Ct. at 749.

▮ As originally formulated, Younger abstention was appropriate only where: (1) there was an ongoing (or pending) state proceeding; (2) the state proceeding was criminal and (3) no unusual circumstances counseling against abstention were present. *Anderson County*, 705 F.2d at 188. Younger abstention has been modified somewhat to warrant abstention in civil cases but only where there exists an "important state interest." *Middlesex County Ethics Committee v. Garden State Bar Ass'n.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2522, 73 L.Ed.2d 116 (1982).

▮ Younger abstention does not apply to this case. As important as the interest of the City of Pittsburgh in administering its own laws without federal interference may be, the ultimate magnitude of that interest can be gauged only by placing it in perspective and weighing it against competing interests.

The interest of the City of Pittsburgh in administering its own tax laws quite possibly qualifies as an "important state interest" when the only other interest to be considered is a private one. *See Great Lakes Dredge and Dock Co. v. Huffman*, 319 U.S. 293, 297–298, 63 S.Ct. 1070, 1072–1073, 87 L.Ed. 1407 (1943). However, the magnitude of the City's interest is diminished considerably when the United States' sovereign interest is involved. *Anderson County*, 705 F.2d at 188.

▮ The difference in the magnitude of the City's interest when weighed against private interest, on the one hand, and the United States' interest in protecting its sovereignty, on the other, is reflected in 28 U.S.C. § 1341. The Tax Injunction Act preserves the City's fiscal integrity by denying a federal court jurisdiction over an action brought by a private individual to enjoin tax assessments when an efficient state remedy is available. However, the Act does not deny a federal court jurisdiction over such an action when brought by the United States to protect its own sovereign

interest. *See Lewisburg Area School District*, 539 F.2d at 311.

As has been pointed out, the United States has challenged the levy of the City of Pittsburgh business privilege tax on grounds that the tax interferes with the United States' own sovereign interest as protected by the Supremacy Clause. Younger abstention therefore is not appropriate in this case because the City's interest in administering its tax laws without federal interference is not of sufficient magnitude.

## C. *Burford Abstention*

 The third of the abstention doctrines is Burford abstention. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). It applies when there exists a state-created regulatory scheme which would be disrupted by federal court review and there exists a specially-created forum with specialized competence in that particular area. *Burford*, 319 U.S. at 327, 332–333, 63 S.Ct. at 1104–1106–1107. The primary consideration is whether the provision to be reviewed in federal court requires such highly specialized expertise that it would be better to defer to those state adjudicative bodies specially created for handling such matters.

 Neither of the factors favoring Burford astention is present in this action. The tax provision presently before this Court is not part of a complex regulatory scheme requiring highly specialized expertise. Also, there does not exist any forum with such specialized expertise specifically created for handling such matters. State judicial review of this matter is had in the Court of Common Pleas. Burford abstention therefore does not apply in this case.

## D. *Conclusion*

Not only does this Court have jurisdiction over this action, there are no countervailing interests at stake which would dictate that this Court abstain from discharging its duty to adjudicate the controversy presently before it.

## IV. *Summary Judgment*

Plaintiffs and defendants have filed cross-motions for summary judgment. Plaintiffs' motion will be granted and the defendants' denied for reasons set forth below.

Defendants present two arguments in support of their summary judgment motion.

First, defendants argue that they should prevail because the Congress intentionally waived any tax immunity that federal court reporters otherwise might enjoy when it enacted the Buck Act, 4 U.S.C. §§ 106(a) and 111. As was indicated previously, the defendants have misconstrued the Buck Act.[3] Moreover, the Buck Act is not relevant here. Plaintiffs have not alleged that federal court reporters are immune to the tax in question either because the work in question had been performed on a federal enclave or because the reporters reside on a federal enclave. Rather, plaintiffs have alleged that the tax in question violates the Supremacy Clause because federal court reporters function as an instrumentality of the United States in preparing verbatim transcripts. The matter of taxation of federal employees living or working on federal enclaves is not at issue in this case.

Second, defendants argue that summary judgment should be granted in their favor because immunity from state taxation applies to situations where the levy is on the Federal Government itself, but not to situations where "the tax has an effect on the United States, or even because the Federal Government shoulders the entire economic burden of the levy." *United States v. New Mexico*, 455 U.S. 720, 734, 102 S.Ct. 1373, 1382, 71 L.Ed.2d 580 (1982).

 Defendants have misapplied the law on tax immunity to this case. In general, a state may not, "consistent with the Supremacy Clause, levy a tax directly on the United States." *New Mexico*, 455 U.S.

---

3. See IIc, above.

at 733, 102 S.Ct. at 1382, citing *Mayo v. United States,* 319 U.S. 441, 447, 63 S.Ct. 1137, 1140, 87 L.Ed. 1504 (1943). However, immunity from State taxation may, under certain conditions, be extended to entities other than the United States. Tax immunity also applies when the levy falls on an "agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." *New Mexico,* 455 U.S. at 735, 102 S.Ct. at 1382.

▪ In order to qualify as an "agency or instrumentality" of the United States, that other entity must stand in a special relationship to the United States, which relationship is such that it can be viewed as the *alter ego* of the United States. That relationship has been variously described. That other entity must be so intimately connected with the exercise of a power or the performance of a duty by the Federal Government that taxation of that entity would amount to direct interference with the functions of the Federal Government. *James v. Dravo Contracting Co.,* 302 U.S. 134, 157, 58 S.Ct. 208, 219, 82 L.Ed. 155 (1937). The taxed entity must be "so assimilated by the government as to become one of its constituent parts." *United States v. Boyd,* 378 U.S. 39, 47, 84 S.Ct. 1518, 1523, 12 L.Ed.2d 713 (1964). The taxed entity must be "an arm of the Government deemed by it essential for the performance of governmental functions." *Standard Oil Co. v. Johnson,* 316 U.S. 481, 485, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611 (1942).

▪ The nature of the relationship between federal court reporters and the United States is set forth in 28 U.S.C. § 753. Federal court reporters are appointed by the federal district courts. 28 U.S.C. § 753(a). Reporters are required to record verbatim every session of court and any other proceeding designated by rule or by order of the Court or by one of the judges. Upon request of any party who agrees to pay the fee therefor, or upon request of a Judge of the Court, the reporter is required to promptly transcribe the original proceeding and make it available to the party requesting it. 28 U.S.C. § 753(b). Reporters are subject to the supervision of the appointing court or the Judicial Conference in the performance of their duties. 28 U.S.C. § 753(d). Finally, the fees collected by each reporter for providing requested transcripts are established by the appointing Court, subject to the approval of the Judicial Conference, 28 U.S.C. § 753(f).

Federal court reporters function as "instrumentalities" of the United States when they provide verbatim transcripts of proceedings recorded by them in their official capacity as federal court reporters. The production of such transcripts is essential to the performance of the functions of the federal judiciary. Federal court reporters thus serve as "arms of the federal judiciary" necessary for the performance of those functions when they provide verbatim transcripts.

It follows that Jordan Lilienthal is immune to the levy by the City of Pittsburgh of its business privilege tax upon official transcripts provided by him in his official capacity as federal court reporter. Because such a levy is violative of the Supremacy Clause of the United States Constitution, summary judgment will be granted for the plaintiffs and against the defendants.

An appropriate order will be issued.